John Du Wors, State Bar No. 233913
*john@newmanlaw.com*
Samantha Everett, State Bar No. 234402
*samantha@newmanlaw.com*
NEWMAN DU WORS LLP
2101 Fourth Avenue, Suite 1500
Seattle WA 98121
Telephone:   (206) 274-2800
Facsimile:    (206) 274-2801

Attorneys for Plaintiff
1-800 Remodel, Inc.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 1-800 REMODEL, INC., a California corporation,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>DENISE J. BODOR, an individual,<br><br>　　　　Defendant. | Case No. 2:18-cv-00472<br>Assigned to<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTIVE RELIEF, AND DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff 1-800 REMODEL, INC. ("Plaintiff" or "1-800 Remodel") alleges as follows:

## INTRODUCTION

1. Plaintiff 1-800 Remodel employed Defendant from approximately July 2017, to December 2017. Defendant had several problems with other employees and independent contractors, which Plaintiff worked to solve. Plaintiff learned that Defendant repeatedly left work for extended periods of time without clocking out; left without signing out for periods of time often in excess of an hour, and then returned without signing in on virtually a daily basis; left each afternoon for "lunch" without signing out and even pretended to sign in upon return, apparently to hide her conduct from other employees viewing her re-entry of the

1
COMPLAINT

1  premises.

2  2. Defendant has filed a complaint with the EEOC claiming that she was discriminated against in violation of Title VII of the Civil Rights Act of 1964, and has threatened to sue Plaintiff based on the same claims.

3. Plaintiff seeks declaratory judgment that Plaintiff did not engage in discrimination against Defendant, including any violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et seq., and declaratory judgment that Defendant misappropriated Plaintiff's trade secrets in violation of the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 et seq. (the "DTSA") and California's Uniform Trade Secrets Act, Cal. Civ. Code § 3426 et seq. (the "UTSA") when she used Plaintiff's sensitive information to file complaints in the California Department of Consumer Affairs Contractor State License Board. Plaintiff seeks an injunction requiring Defendant to withdraw her complaints to the California Department of Consumer Affairs Contractor State License Board, and against Defendant engaging in any other unlawful use of Plaintiff's trade secrets in violation of the DTSA and UTSA. Finally, Plaintiff seeks damages against Defendant for misappropriation of trade secrets in violation of the DTSA and UTSA; violations of the Computer Fraud and Abuse (18 U.S.C. § 1030 et seq. (the "CFAA")); wage theft; fraud; conversion; and unjust enrichment.

**PARTIES**

4. Plaintiff 1-800 Remodel is a corporation organized and existing under the laws of the State of California, with its principal place of business located in Los Angeles, California.

5. Defendant Denise Bodor is an individual residing in Los Angeles, California.

**JURISDICTION AND VENUE**

6. This is an action for declaratory judgment arising under (i) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et seq., (ii) the Defend Trade

2
COMPLAINT

Secrets Act of 2016, 18 U.S.C. § 1836 et seq.; (iii) 18 U.S.C. § 1030 et seq. (the "CFAA"); and (iv) 28 U.S.C. §§ 2201 and 2202 (the Declaratory Judgment Act). There is more than $75,000 in controversy. Thus, this Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338.

7. Defendant is subject to the personal jurisdiction of this court because she is a resident of California.

8. Venue of this action is proper in the Central District of California under 28 U.S.C. § 1391(b)(1) and (2) because Defendant is subject to the personal jurisdiction of this Court in this Judicial District and thus qualifies as a resident of this Judicial District under 28 U.S.C. § 1391(c)(2). In addition, the events giving rise to Plaintiff's claims occurred in the Central District of California.

## FACTS

9. 1-800 Remodel is a home-improvement company that provides a free referral service to homeowners looking to remodel their homes.

10. In or around July 2017, Defendant was hired as an employee of 1-800 Remodel with the title of "Compliance and Customer Satisfaction." Her duties included helping customers with questions and complaints. She was a member of Plaintiff's project management team and reported directly to David Hirsch, Director of Operations for Plaintiff. She had no other direct supervisors.

11. Upon her hiring by Plaintiff, Defendant received, read, and acknowledged the 1-800 Remodel Employee Handbook, which provides, among other things:

> EMPLOYEEs will perform services for 1-800 REMODEL INC. that may require 1-800 REMODEL INC. to disclose confidential and proprietary information ("Confidential Information") to EMPLOYEE. (Confidential Information is any information of any kind, nature, or description concerning any matters affecting or relating to Employee's services for 1-800 REMODEL INC., the

business or operations of 1-800 REMODEL INC., and/or the products, drawings, plans, processes, or other data of 1-800 REMODEL INC.). Accordingly, to protect the 1-800 REMODEL INC. Confidential Information that will be disclosed to EMPLOYEE, the EMPLOYEE agrees as follows.

A. EMPLOYEE will hold the Confidential Information received from 1-800 REMODEL INC. in strict confidence and shall exercise a reasonable degree of care to prevent disclosure to others.

B. EMPLOYEE will not disclose or divulge either directly or indirectly the Confidential Information to others unless first authorized to do so in writing by 1-800 REMODEL INC.

C. EMPLOYEE will not reproduce the Confidential Information nor use this information commercially or for any purpose other than the performance of his/her duties for 1-800 REMODEL INC.

D. EMPLOYEE will, upon the request or upon termination of his/her relationship with 1-800 REMODEL INC., deliver to 1-800 REMODEL INC. any drawings, notes, documents, equipment, and materials received from 1-800 REMODEL INC. or originating from its activities for 1-800 REMODEL INC.

E. 1-800 REMODEL INC. shall have the sole right to determine the treatment of any information that is part or project specific received from EMPLOYEE, including the right to keep the same as a trade secret, to use and disclose the same without prior patent applications, to file copyright registrations in its own name or to follow any other procedure as 1-800 REMODEL INC. may deem appropriate.

F. 1-800 REMODEL INC. reserves the right to take disciplinary action, up to and including termination for violations of this agreement.

12. In or around September 2017, Defendant engaged in an altercation with Darcey Merlo, an employee who worked in as a project manager at the 1-800 Remodel. Mr. Merlo was not Defendant's supervisor in any capacity. Allegedly, Defendant was not getting the help she required from Mr. Merlo to service her

customers.

13. Both Defendant and Mr. Merlo participated in the altercation. Following the altercation with Mr. Merlo, Defendant reported the incident to Mr. David Hirsch and alleged that Mr. Merlo was rude and disrespectful to her. Defendant sent Mr. Hirsch an email detailing the dispute from her perspective. According to Defendant's complaint at the time, no part of the dispute involved gender-based hostility or discrimination.

14. Mr. Hirsch disciplined Mr. Merlo and on September 1, 2017, Mr. Hirsch moderated a meeting between Defendant and Mr. Merlo. Both parties apologized to each other and agreed to move past their dispute and continue working together. Defendant stated via email that she accepted the resolution.

15. No other incident regarding Mr. Merlo was ever brought forward to management.

16. In or around September 2017, Defendant alleged to Mr. Hirsch that Joey Cavallo, an independent contractor sales representative for Plaintiff, made a sexually suggestive comment after they got into an argument. Mr. Cavallo alleged that Defendant threatened to cause him bodily harm. Ms Bodor demanded an apology, and Mr. Cavallo provided one in writing.

17. Defendant informed Mr. Hirsch that the issue was resolved to her satisfaction.

18. Plaintiff has not done any work with Mr. Cavallo since Defendant reported the incident.

19. In or around November 2017, Defendant informed Mr. Hirsch that Yoni Eliyahu, an independent contractor for Plaintiff, had sent her a series of angry text messages indicating that he believed Defendant to be stealing his clients. Mr. Eliyahu called Defendant a "lowlife" and threatened to "come down to la (sic) make sure (sic) u (sic) don't do shit like that anymore." He then clarified "there a (sic) not threat to your health or your physical situation. Everything was meant

within company management."

20. None of the messages Defendant showed to Mr. Hirsch included any sexual or gender-related content.

21. Upon learning of these text messages, the Plaintiff immediately terminated its relationship with Mr. Eliyahu.

22. On November 9, 2017, Defendant threatened to file a Charge of Discrimination with the Equal Opportunity Employment Commission, alleging gender discrimination, and demanded $29,475.00 in settlement.

23. After Plaintiff refused Defendant's demand, on November 14, 2017, Defendant filed a Charge of Discrimination with the Equal Opportunity Employment Commission, alleging gender discrimination.

24. On November 15, 2017, Defendant threatened to file 12 separate complaints with the California Department of Consumer Affairs Contractor State License Board using information she had gained during the course of her job from and about Plaintiff's customers.

25. Defendant took Thursday November 16 and Friday November 17 two days off of work. Defendant was responsible for all communication with customers, and especially with problem jobs and complaints. Because Plaintiff needed to accomplish this work in Defendant's absence, Plaintiff reset the personal password Defendant had used for her work email to a shared password. Several important emails were in Defendant's work email and Mr. Hirsch dealt with them personally. No emails were tampered with or deleted. Defendant was informed that her password had been reset and immediately changed it back to a personal password.

26. Throughout the course of her employment, Defendant was never granted permission to work from home.

27. Throughout the course of her employment, Defendant was never asked to work on weekends or after hours. Defendant was instructed in writing that she was required to work 40 or fewer hours per week and not incur any overtime. Nor

was any overtime required for Defendant to complete her work.

28. Defendant charged Plaintiff 18.92 hours of overtime. Plaintiff is informed and believes that Defendant charged Plaintiff for these hours but did not work them.

29. On one occasion, Defendant requested to work on a discreet project on a day the office was closed, and Defendant was paid separately for that project. Defendant was never prevented from recording her regular hours in Plaintiff's timekeeping system.

30. Defendant was given a company laptop, phone line, and direct number. Defendant was never asked to use her personal phone, and never informed management that she was using her personal phone.

31. As set forth in Plaintiff's Employee Handbook, Defendant was required to take a mandatory, 30-minute unpaid lunch break. Employees are required to clock out when taking this break and clock back in when they resume working. During that break, employees are prohibited from performing any work-related activities.

32. Defendant lived within walking distance of Plaintiff's offices and frequently went home.

33. Suspicious of Defendant's time charging, Plaintiff's management team determined that it would review video footage of Defendant's time clock usage and attendance.

34. From that footage, Plaintiff learned that on several occasions, Defendant charged for time she did not work, including but not limited to:

    a. On a nearly daily basis, Defendant arrived at Plaintiff's office early in the morning, clocked in, immediately left the office, and returned sometime later—frequently over one hour later—to begin work. Occasionally Defendant pretended to sign in, apparently to avoid suspicion.

  b. On numerous occasions, Defendant left the office for extended periods in the afternoon, presumably for her lunch break, without clocking out.

  c. In so doing, Defendant charged Plaintiff for numerous hours that she did not work.

  d. Multiple weekend days, including Saturday, December 2, 2017, on which Defendant came to the office, clocked in, left for several hours, and then returned to clock out, without having performed any work for Plaintiff.

35. Plaintiff also learned that Defendant made an unauthorized copy of the key to Plaintiff's offices, which she used to access the building on weekends.

36. Upon learning of Defendant's charging for hours she did not work, Plaintiff decided to suspend Defendant temporarily, until its investigation was complete.

37. After learning that Plaintiff was investigating her wage theft, Defendant forwarded her personal email eighty-two (82) sensitive proprietary emails and documents, and deleted substantial amounts of information from the email account assigned to her.

38. Defendant also took photos of Plaintiff's proprietary and sensitive documents and mail on her personal cellular phone.

39. On December 8, 2017, Mr. Hirsch called Defendant into his office so that he and Mr. Alan Hirsch could officially inform her of the decision to suspend her for three (3) days. Defendant recorded the meeting.

40. During the meeting, Mr. Hirsch requested Defendant's password to Plaintiff's laptop computer it had assigned to her. Defendant falsely claimed that she could not remember the password to the Laptop. Another Company principal, Gabe Hirsch, had possession of the Laptop, in order to view its contents and ensure the security of the Company's proprietary information.

41. When Defendant was leaving the meeting, and realized that Gabe Hirsch had the laptop, in the presence of multiple witnesses, she jumped toward him, wrestled the laptop away from him, and began screaming. She then opened the laptop and appeared to be logging out of programs. She forwarded additional proprietary information to her personal email address. Mr. Hirsch asked her to stop and leave but she refused. She then deleted additional content from Plaintiff's laptop computer, slammed it down, and walked out.

## FIRST CAUSE OF ACTION

**(Declaration that that Defendant did not violate Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et seq. or the California Fair Employment and Housing Act (FEHA))**

42. Plaintiff re-alleges and incorporates by reference the allegations set forth above.

43. This is a declaratory judgment action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et seq. and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. Plaintiff and Defendant have significant and immediate adverse legal interests.

44. Defendant has filed a petition with the Equal Employment Opportunity Commission and the California Department of Fair Employment and Housing, alleging that she was the victim of harassment and/or discrimination in violation of state and federal law.

45. There is an actual, substantial, and continuing justiciable controversy between Plaintiff and Defendant regarding whether Plaintiff violated she was the victim of harassment and/or discrimination in violation of state and federal law by harassing and/or discriminating against Defendant.

46. As set forth in detail above, there was no concerted pattern of harassment of a repeated, routine, or a generalized nature, none of the alleged incidents are related in any way to Ms. Bodor's gender, and no individual involved

in Defendant's allegations was her supervisor. Finally, Plaintiff acted in response to each of Defendant's allegations and resolved each to Defendant's stated satisfaction. Nor can Defendant's suspension be considered retaliation, when it was based on Defendant's proven wage theft.

47. For these reasons, Plaintiff is entitled to declaratory judgment that it did not violate Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et seq. or the California Fair Employment and Housing Act (FEHA).

## SECOND CAUSE OF ACTION

**(Declaration that Defendant misappropriated Plaintiff's trade secrets and for an Injunction.)**

48. Plaintiff re-alleges and incorporates by reference the allegations set forth above.

49. This is a declaratory judgment action under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 et seq. (the "DTSA") and California's Uniform Trade Secrets Act, Cal. Civ. Code § 3426 et seq. (the "UTSA"), and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

50. Plaintiff and Defendant have significant and immediate adverse legal interests.

51. Plaintiff is the owner of certain information, including but not limited to customer names and contact information, complaints, and other feedback from customers.

52. This information constitutes trade secrets that enable Plaintiff to conduct is business, serve customers, and correct problems that may arise. Such information is kept secret by Plaintiff and is accessible only to employees of Plaintiff with permission to view such information. Should such information be accessible to individuals or businesses outside of Plaintiff, it could be used to economically harm Plaintiff and enrich the possessor.

53. During the course of her employment, Defendant had access to this trade

secret information via Company-owned laptop computer and Company computer systems.

54. Upon hiring, Defendant received, read, and acknowledged the 1-800 Remodel Employee Handbook, which provides in relevant part:

> EMPLOYEEs will perform services for 1-800 REMODEL INC. that may require 1-800 REMODEL INC. to disclose confidential and proprietary information ("Confidential Information") to EMPLOYEE. (Confidential Information is any information of any kind, nature, or description concerning any matters affecting or relating to Employee's services for 1-800 REMODEL INC., the business or operations of 1-800 REMODEL INC., and/or the products, drawings, plans, processes, or other data of 1-800 REMODEL INC.). Accordingly, to protect the 1-800 REMODEL INC. Confidential Information that will be disclosed to EMPLOYEE, the EMPLOYEE agrees as follows.
>
> A. EMPLOYEE will hold the Confidential Information received from 1-800 REMODEL INC. in strict confidence and shall exercise a reasonable degree of care to prevent disclosure to others.
>
> B. EMPLOYEE will not disclose or divulge either directly or indirectly the Confidential Information to others unless first authorized to do so in writing by 1-800 REMODEL INC.
>
> C. EMPLOYEE will not reproduce the Confidential Information nor use this information commercially or for any purpose other than the performance of his/her duties for 1-800 REMODEL INC.
>
> D. EMPLOYEE will, upon the request or upon termination of his/her relationship with 1-800 REMODEL INC., deliver to 1-800 REMODEL INC. any drawings, notes, documents, equipment, and materials received from 1-800 REMODEL INC. or originating from its activities for 1-800 REMODEL INC.
>
> E. 1-800 REMODEL INC. shall have the sole right to determine the treatment of any information that is part or project specific received from EMPLOYEE, including the right to keep the same as a trade secret, to use and disclose the same without prior patent applications, to file copyright registrations in its own name or to

follow any other procedure as 1-800 REMODEL INC. may deem appropriate.

F. 1-800 REMODEL INC. reserves the right to take disciplinary action, up to and including termination for violations of this agreement.

55. Relying onthe confidential, sensitive, and proprietary information Defendant gained during her employment with Plaintiff and forwarded to herself upon becoming aware that Plaintiff was investigating her time charging, Plaintiff has threatened to file twelve (12) complaints with the California Department of Consumer Affairs Contractor State License Board.

56. For these reasons, Plaintiff is entitled to a declaration that Defendant misappropriated Plaintiff's trade secrets, in violation of the DTSA and the UTSA, when she took possession of Plaintiff's sensitive information without permission and used it to file complaints in the California Department of Consumer Affairs Contractor State License Board.

57. Plaintiff further requests that his Court order Defendant to withdraw any and all claims she has filed with the California Department of Consumer Affairs Contractor State License Board that may contain this trade secret information.

58. Plaintiff further requests that his Court enjoin Defendant from utilizing any trade secret information obtained from Plaintiff in any way.

## THIRD CAUSE OF ACTION

**(Misappropriation of Trade Secrets under the DTSA and UTSA)**

59. Plaintiff re-alleges and incorporates by reference the allegations set forth above.

60. Plaintiff is the owner of certain information, including but not limited to customer names and contact information, complaints, and other feedback from customers.

61. This information constitutes trade secrets that enable Plaintiff to

conduct is business, serve customers, and correct problems that may arise. Such information is kept secret by Plaintiff and is accessible only to employees of Plaintiff with permission to view such information. Should such information be accessible to individuals or businesses outside of Plaintiff, it could be used to economically harm Plaintiff and enrich the possessor.

62. During her employment, Defendant had access to this trade secret information via Company-owned laptop computer and Company computer systems.

63. Upon hiring, Defendant received, read, and acknowledged the 1-800 Remodel Employee Handbook, which provides in relevant part:

> EMPLOYEEs will perform services for 1-800 REMODEL INC. that may require 1-800 REMODEL INC. to disclose confidential and proprietary information ("Confidential Information") to EMPLOYEE. (Confidential Information is any information of any kind, nature, or description concerning any matters affecting or relating to Employee's services for 1-800 REMODEL INC., the business or operations of 1-800 REMODEL INC., and/or the products, drawings, plans, processes, or other data of 1-800 REMODEL INC.). Accordingly, to protect the 1-800 REMODEL INC. Confidential Information that will be disclosed to EMPLOYEE, the EMPLOYEE agrees as follows.
>
> A. EMPLOYEE will hold the Confidential Information received from 1-800 REMODEL INC. in strict confidence and shall exercise a reasonable degree of care to prevent disclosure to others.
>
> B. EMPLOYEE will not disclose or divulge either directly or indirectly the Confidential Information to others unless first authorized to do so in writing by 1-800 REMODEL INC.
>
> C. EMPLOYEE will not reproduce the Confidential Information nor use this information commercially or for any purpose other than the performance of his/her duties for 1-800 REMODEL INC.
>
> D. EMPLOYEE will, upon the request or upon termination of his/her relationship with 1-800 REMODEL INC., deliver to 1-800

REMODEL INC. any drawings, notes, documents, equipment, and materials received from 1-800 REMODEL INC. or originating from its activities for 1-800 REMODEL INC.

E. 1-800 REMODEL INC. shall have the sole right to determine the treatment of any information that is part or project specific received from EMPLOYEE, including the right to keep the same as a trade secret, to use and disclose the same without prior patent applications, to file copyright registrations in its own name or to follow any other procedure as 1-800 REMODEL INC. may deem appropriate.

F. 1-800 REMODEL INC. reserves the right to take disciplinary action, up to and including termination for violations of this agreement.

64. Relying on the confidential, sensitive, and proprietary information Defendant gained during her employment with Plaintiff and forwarded to herself upon becoming aware that Plaintiff was investigating her time charging, Plaintiff has threatened to file twelve (12) complaints with the California Department of Consumer Affairs Contractor State License Board.

65. Defendant's misappropriation of Plaintiff's trade secrets has caused significant damage to Plaintiff's business and damages in an amount to be determined at trial.

66. Plaintiff further requests that his Court order Defendant to withdraw any and all claims she has filed with the California Department of Consumer Affairs Contractor State License Board that may contain this trade secret information.

67. Plaintiff further requests that his Court enjoin Defendant from utilizing any trade secret information obtained from Plaintiff in any way.

68. Upon information and belief, Defendant's misappropriation has been willful and malicious in light of Defendant's blatant violation of the 1-800 Remodel Employee Contract and the December 8, 2017 meeting and subsequent confrontations. Therefore, Plaintiff is entitled to an award of punitive or treble

damages and attorneys' fees pursuant to California Civil Code Sections 3426.3(c) and 3426.4.

## FOURTH CAUSE OF ACTION
## (Computer Fraud and Abuse)

69. Plaintiff re-alleges and incorporates by reference the allegations set forth above.

70. In or around December 2017, Defendant intentionally accessed a computer owned by Plaintiff when she logged in to her Plaintiff-issued laptop computer, forwarded eighty-two (82) proprietary emails to her personal email address, and deleted various information. Such action exceeded Defendant's authorized access.

71. On December 8, 2017, Defendant intentionally accessed a computer owned by Plaintiff when she grabbed the computer in question from Gabe Hirsch and logged in to it, deleting certain information and forwarding information to her personal email address. Defendant's access to the computer was wholly without authorization.

72. Plaintiff is informed and believes that Defendant accessed this computer and the information therein for private financial gain, in order to extort a monetary settlement from Plaintiff.

73. Plaintiff is informed and believes that Defendant accessed this computer and the information therein in furtherance of her misappropriation of trade secrets and to cover up her wage theft.

74. Defendant's action impaired the integrity and availability of the data and information she deleted from the machine and her Plaintiff-owned email address. Such impairment caused damage in an amount to be determined at trial, but on information and belief, such damages amounted at least $5,000.

## FIFTH CAUSE OF ACTION

## (Fraud)

75. Plaintiff re-alleges and incorporates by reference the allegations set forth above.

76. Defendant represented the hours she entered into Plaintiff's timekeeping system were true and accurate representations of the hours she performed her work for Plaintiff.

77. As set forth in detail herein, Defendant's representations were false. On multiple occasions, Defendant clocked in, left work without clocking out, and failed to notify management of the discrepancy.

78. Defendant knew the representations were false.

79. Defendant intended for Plaintiff to rely on her representations when paying her an hourly rate for her work, the calculation of which depended entirely on Defendant's time reporting.

80. Plaintiff reasonably relied on Defendant's misrepresentation when it paid her for all hours she represented that she worked, and Plaintiff was harmed when it paid Defendant for hours she did not work.

81. Plaintiff's reliance on Defendant's misrepresentation was the sole cause of Defendant's harm.

## SIXTH CAUSE OF ACTION

## (Breach of Fiduciary Duty)

82. Plaintiff re-alleges and incorporates by reference the allegations set forth above.

83. Defendant was Plaintiff's employee and was employed to act on behalf of Plaintiff for the purposes of fulfilling her duties in her role as Compliance and Customer Satisfaction, including safeguarding confidential, sensitive, and proprietary information that she received during the course of her duties.

84. When Defendant failed to properly report her hours worked, deleted files

from her company-issued computer, emailed sensitive information to her personal email address, prevented Plaintiff from accessing her company-issued computer, threatened to (and did) use sensitive and proprietary information to file claims against Plaintiffs, and attempted to extort a settlement from Plaintiffs, Defendant failed to act as a reasonably careful employee would have acted under the circumstances.

85. Defendant's actions were the sole cause of Plaintiff's harm, loss of data and information, inability to properly service customers, payment of unearned wages, and damages in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION
### (Breach of Duty of Loyalty)

86. Plaintiff re-alleges and incorporates by reference the allegations set forth above.

87. Defendant was Plaintiff's employee and was employed to act on behalf of Plaintiff for the purposes of fulfilling her duties in her role as Compliance and Customer Satisfaction, including safeguarding confidential, sensitive, and proprietary information that she received during the course of her duties.

88. Defendant knowingly acted against Plaintiff's interests when she Defendant failed to properly report her hours worked, deleted files from her company-issued computer, emailed sensitive information to her personal email address, prevented Plaintiff from accessing her company-issued computer, threatened to (and did) use sensitive and proprietary information to file claims against Plaintiffs, and attempted to extort a settlement from Plaintiffs.

89. Plaintiffs did not give any consent to Defendant's conduct.

90. Defendant's actions were the sole cause of Plaintiff's harm, loss of data and information, inability to properly service customers, payment of unearned wages, and damages in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION

### (Conversion)

91. Plaintiff re-alleges and incorporates by reference the allegations set forth above.

92. Plaintiff had a right to possess: a) all amounts unearned by Defendant; b) Plaintiff's computer it had issued to Defendant to use in the scope of her employment; and c) the information and data stored on the computer it had issued to Defendant to use in the scope of her employment.

93. Defendant intentionally and substantially interfered with Plaintiff's possession of this property when she failed to properly report her hours worked, deleted files from her company-issued computer, emailed sensitive information to her personal email address, and prevented Plaintiff from accessing her company-issued computer.

94. Plaintiff did not consent to Defendant's actions.

95. Defendant's actions were the sole cause of Plaintiff's harm, loss of data and information, inability to properly service customers, payment of unearned wages, and damages in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

### (Unjust Enrichment)

96. Plaintiff re-alleges and incorporates by reference the allegations set forth above.

97. When Defendant failed to properly report her hours worked, she was paid for those hours by Plaintiff.

98. Defendant was not entitled to be paid for any hours she did not work.

99. As such, Defendant was unjustly enriched.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for the following relief:

1. A declaration that Plaintiff did not violate Title VII of the Civil Rights

    Act of 1964, 42 U.S.C. § 2000(e) et seq. or the California Fair Employment and Housing Act (FEHA);

2. A declaration that that Defendant misappropriated Plaintiff's trade secrets, in violation of the DTSA and the UTSA, when she took possession of Plaintiff's sensitive information without permission and used it to file complaints in the California Department of Consumer Affairs Contractor State License Board.

3. An order requiring Defendant to withdraw any and all claims she has filed with the California Department of Consumer Affairs Contractor State License Board that may contain this trade secret information;

4. An order prohibiting Defendant from utilizing any trade secret information obtained from Plaintiff in any way;

5. Damages in an amount to be determined at trial;

6. Treble damages for willful and malicious misappropriation of trade secrets;

7. Punitive damages for willful and malicious misappropriation of trade secrets;

8. Attorneys' fees for willful and malicious misappropriation of trade secrets; and

9. Disgorgement of all amounts paid over and above the amounts owed to Defendant for hours worked.

Dated: January 18, 2018

NEWMAN DU WORS LLP

_____
John Du Wors, State Bar No. 233913
*john@newmanlaw.com*
Samantha Everett, State Bar No. 234402
*samantha@newmanlaw.com*

Attorney for Plaintiff
1-800 Remodel, Inc.

## JURY DEMAND

Under Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff 1-800 Remodel, Inc. demands a trial by jury of all issues presented in this complaint which are so triable.

Dated: January 18, 2018

NEWMAN DU WORS LLP

_____
John Du Wors, State Bar No. 233913
*john@newmanlaw.com*
Samantha Everett, State Bar No. 234402
*samantha@newmanlaw.com*

Attorney for Plaintiff
1-800 Remodel, Inc.